### VIRGINIA–LINCOLN FURNITURE CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 3159.

Circuit Court of Appeals, Fourth Circuit.
March 7, 1932.

This is a petition to review a decision of the Board of Tax Appeals. The matter involved is the deduction claimed by petitioner on account of discounts to which customers were entitled on sales made in one year which were not taken by the customer until the bills were paid in the following year. The facts as found by the Board of Tax Appeals are as follows:

"The petitioner is a Virginia corporation with its principal office at Marion, where it is engaged in the manufacture and sale of furniture. Sales made by the petitioner are subject to discount of from 2 per cent to 15 per cent, depending upon the time of payment. In some instances upon large orders, the discount is allowed regardless of the time of payment, but in other cases the discount is allowed only if payment is made within the time specified in the invoice or bill of sale. The average discount allowable was approximately 10 per cent. When a sale is made, the customer is charged with the full list price of the article sold and sales are credited in the same amount. No entry is made on the books with respect to discount until payment, at which time appropriate credit is given for whatever discount is allowable. In its returns for 1922 and 1923, petitioner reported gross sales in the respective amounts of $746,745.81 and $1,483,725.44. It had accounts receivable outstanding at December 31, 1922, and December 31, 1923, in the respective amounts of $188,854.92 and $258,-137.91. Sales which gave rise to the foregoing accounts receivable had been included in gross income for the preceding year or years, and these accounts receivable were subject to the discounts referred to above. In 1923 customers whose accounts were out-

standing at December 31, 1922, and were included in the amount of $188,854.92, referred to above, were allowed deductions as discount in the payment of their bills to the extent of $14,639.01. Likewise, in 1924 customers whose accounts were outstanding at December 31, 1923, and were included in the amount of $258,137.91 referred to above were allowed deductions as discount in the payment of their bills to the extent of $22,112.90. Reserves for future discounts on accounts receivable outstanding at the end of the year were computed by the petitioner for the years ending December 31, 1922, and December 31, 1923, in the respective amounts of $13,219.84 and $22,141. In the returns as filed for 1922 and 1923, no deduction was claimed for 1922 on account of charges to the reserve for that year, but for 1923 a deduction was claimed in the amount of $22,141. In the final determination as made by the Commissioner, no allowance was made in 1922 on account of the reserve set up for that year and in 1923 the deduction claimed in the amount of $22,141 on account of the reserve set up was disallowed in its entirety."

J. P. Buchanan, of Marion, Va., for petitioner.

Morton K. Rothschild, Sp. Asst. to the Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to the Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and R. N. Shaw, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before PARKER and SOPER, Circuit Judges, and WAY, District Judge.

PARKER, Circuit Judge (after stating the facts as above).

Petitioner, a furniture manufacturing corporation, had outstanding accounts at the end of the year 1922 of $188,854.92 upon which its customers were entitled to trade and time discounts of between two and fifteen per cent. Based on the experience of that year, it claimed before the Commissioner a deduction from the amount of the accounts of $13,219.84. As a matter of fact, the discount allowed on these accounts in the year 1923 was $14,639.01. At the end of the year 1923 petitioner had outstanding accounts of $258,137.91, upon which the estimated discount was $22,141.00, and the discount actually allowed in 1924 was $22,112.90.

It appears that in its return for the year 1922, petitioner did not claim any deduction by way of estimated discount on accounts outstanding at the end of the year. In its return for 1923, however, it claimed a deduction of $22,141.00 for accounts outstanding at the end of that year. On January 17, 1927, the Commissioner reviewed its returns for both years, allowed the deduction claimed for 1923 and also allowed a deduction from the 1922 return of $13,219.84 for discounts on the accounts outstanding at the end of that year. The sum of $13,219.84 was at the same time added to the 1923 income, as the allowance of the deduction in the year in which the accounts were created precluded its being allowed in the year in which they were paid. The letter of January 17th however, was followed by one of March 5th in which the Commissioner disallowed the deduction of the $22,141.00 from the 1923 income and the $13,219.84 from the 1922 income, but allowed the latter amount to remain as a deduction from the 1923 income as shown in the original returns. The record does not show whether or not the taxpayer received in 1924 a deduction for the $22,112.90 time discounts allowed customers in 1924 on the accounts outstanding at the end of the year 1923.

After receipt of the letter of March 5, 1927, petitioner filed its petition with the Board of Tax Appeals asking that it be allowed to deduct for each of the years in question the estimated discount on the accounts outstanding at the end of the year. Before this petition was heard, it filed an amended petition setting forth that the discounts in question had actually been allowed to customers in the years 1923 and 1924 respectively and their amount definitely and accurately determined. It asked that it be allowed as a deduction from the accounts outstanding at the end of the years 1922 and 1923 the amount of the discounts so determined, conceding that under prior decisions of the Board it was not entitled to the estimated discounts as set up in its original petition. The Board denied the petition, holding in accordance with its previous decisions that reserves set up by a taxpayer at the close of a taxable year in amounts equal to a certain percentage of its then outstanding accounts, for discounts anticipated in connection with the settlement of such accounts, were not deductible in determining net income, and that such deductions would not be allowed on the ground that the discounts had been rendered certain by the happenings of subsequent years.

The contention of petitioner before us is that it is entitled to deduct the estimated discount from the accounts outstanding at the end of the year, but, if not this, certainly the discount as actually allowed in the succeeding year. The Commissioner denies that petitioner is entitled to a deduction on either basis and makes the further point that, because petitioner did not urge in its amended petition before the Board the right to deduct the estimated discount, it may not rely upon that position here.

We think that the Board was in error in holding that petitioner was not entitled to deduct from accounts outstanding at the end of the year a reserve properly set up in accordance with experience to take care of the discounts to which customers were entitled upon such accounts. The fact that the discounts were to an extent contingent upon the time of payment is immaterial. The experience of petitioner showed with reasonable certainty what the percentage of discount would be; and it was nothing but just and right that, when the government included the unpaid accounts in its estimate of income, it should permit the deduction from such accounts of the discount which the experience of petitioner showed was reasonably to be expected. The question presented is not one of deducting 'losses from gross income under section 234, 42 Stat. 254. It is a question of determining the amount due on the unpaid accounts included in gross income.

While there is some controversy as to whether or not the books of petitioner were kept upon the accrual basis, the Board of Tax Appeals proceeded upon the assumption that they were so kept; and there can be but little doubt but that this was the case. The action of the Commissioner in including the unpaid accounts as income would seem to be conclusive of the matter so far as the question before us is concerned. See Klein, Federal Income Taxation, p. 106, et seq. The keeping of books on such basis is expressly authorized by section 212(b) of the Revenue Act of 1921, 42 Stat. 237, which provides:

"The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income."

Treasury Decision 2433 promulgated as early as 1917 provided in substance that "when the taxpayer, following a consistent accounting practice, sets up reserves to meet liabilities, the 'amount of which or date of maturity' is not definitely determinable, such reserve may be deducted from gross income." United States v. Anderson, 269 U. S. 422, 438, 46 S. Ct. 131, 133, 70 L. Ed. 347. Here petitioner's method of bookkeeping was to charge customers with the full amount of their purchases, although they were entitled to certain trade and cash discounts. Petitioner contends that it was entirely possible, from the experience of the business, to estimate with substantial accuracy what discounts would be allowed from these accounts and what percentage should be deducted to ascertain the amount collectible thereon, i. e. their reasonable net value; and the action of the Board was based, not upon the fact that these estimates were not substantially accurate, but upon the fact that the discounts were taken in the succeeding year when the accounts were paid. We see no reason why petitioner should not have been allowed to deduct the reserve set up in anticipation of such discounts, as it was certainly necessary that this be done to ascertain what part of the accounts could properly be considered as income. It would be manifestly unjust to charge as a part of income accounts which every one knew were subject to a reduction of approximately 10 per cent.

Of course, if the method of accounting employed by a taxpayer does not clearly reflect his true income, the computation of the tax must be made in such manner as in the opinion of the Commissioner does reflect it. Section 212(b), supra. But no contention is made here that the books of the taxpayer were not properly kept or that the deduction of reserve for discounts would not reflect the true income with substantial accuracy. If a taxpayer should seek the deduction of an unreasonable reserve or of one not warranted by its experience as disclosed by its books, the Commissioner should disallow same. But no such contention as this is made. The basis for disallowing the deduction is simply that, as to any particular account, the amount of the time discount is contingent upon payment within a certain time, and that, as there is no separation in the accounts be-

tween time and trade discount, neither will be allowed. We do not think that this is a sufficient basis for the ruling of the Board. Even though there be contingency as to any particular account, if the experience of the company is such that upon the accounts taken as a whole it is possible to predict with substantial accuracy what the discount will be, a deduction in anticipation of same should be allowed. It is the total of the accounts which is considered in computing income; and, if the discount which will be allowed from this total can be determined with reasonable certainty, there is no reason why same should not be deducted. In this respect the case at bar is fundamentally different from Lucas v. American Code Co., 280 U. S. 445, 50 S'. Ct. 202, 203, 74 L. Ed. 538, upon which the Commissioner relies. That case dealt with liability for damages arising from breach of contract, which is a matter more highly speculative than time discount; but it is to be noted that the Supreme Court in that case intimated that even liability for damages may be deductible in cases where it is possible to estimate such liability with reasonable certainty. In this connection, the court said: "In the few cases in which the Board of Tax Appeals has allowed a deduction in the year of the breach, the contracts, involving the purchase and sale of goods, were performable in a comparatively short period; the approximate amount of the damages was reasonably predictable; negotiations for settlement had been commenced within the year and were completed soon after its close; and the taxpayers had accrued on their books, at the end of the year, a liability reasonably estimated to equal the amount of the damages."

If deduction of liability for damages arising from breach of contract is to be allowed because determinable with reasonable accuracy, there is no ground for denying the deduction of time discount in a case such as we have here. The practice followed by the Internal Revenue Bureau with respect to allowing the deduction of such a reserve has been twice changed. At first it was held that a taxpayer might not deduct same. Later this position was changed to allow such deduction. Still later, in deference to decisions of the Board of Tax Appeals, the Bureau returned to its original position. We have carefully examined these decisions (Appeal of M. I. Stewart & Co., 2 B. T. A. 737, and Jackson Casket & Mfg. Co. v. Commissioner of Internal Revenue, 7 B. T. A. 1190), and do not find them convincing. Their sole basis is that trade discounts are contingent, and that deduction of a reserve is not authorized by statute.

In Klein on Federal Taxation, p. 137, it is said with respect to the matter before us: "With respect to accounting for cash discounts, the Bureau held, in an early ruling, that a corporation on an accrual basis was not entitled to deduct a reserve for cash discounts which it might be called upon to allow on accounts due and receivable in the succeeding year. The Bureau later reversed its position by permitting taxpayers, reporting on the accrual basis, who regularly set up a reserve for the amount of cash discounts allowable, to return as income, in each year, the amount of sales less the cash discounts allowable. Then, in view of several Board decisions holding that reserves were not allowable deductions from gross income unless specifically provided for by statute, the Bureau returned to its original position that reserves for cash discount were not deductible. * * * The present rule, which apparently is that where there is any doubt as to whether the discount will be taken no reserve for it may be accrued, is unfortunate and opposed to sound accounting practice. The Board's anathema against accrual of reserves and other contingent liabilities is responsible for the Bureau's attitude toward reserves for cash discounts. It is unthinkable that a higher tribunal, or the Board itself, will not change the situation sooner or later."

It is suggested that time discount is an expense incurred for the payment of money before it is due, that the expense is not incurred until the money is paid and that it should be deducted as an expense at that time. We think, however, that this reasoning is purely theoretical, and ignores the true nature of discount. It is certainly more nearly in accord with the facts to treat the discount as a deduction from the account to which the customer is entitled than as an expense incurred by the taxpayer. But, if discount is to be treated as an expense, it is but just that it be considered along with the account to which it relates, if the latter is to be considered as an item of income. See American National Co. v. U. S., 274 U. S. 99, 105, 47 S. Ct. 520, 522, 71 L. Ed. 946. In the case cited, which dealt with the right to deduct obligations of the taxpayer to pay bonus interest on loans, for the negotiation of which taxpayer had received certain notes payable in the

future but accounted for as income, the court said: "So, in the present case, we think that the amount of the bonus contracts was 'an expense incurred and properly attributable' to the Company's process of earning income during the year 1917. These contracts were not analogous to obligations to pay interest on money borrowed, but were expenses incurred in selling the loan notes in as real a sense as if under its original system of doing business the Company had paid these amounts to brokers as fees for selling the loans or given them notes for such fees. The Company's net income for the year could not have been rightly determined without deducting from the gross income represented by the commission notes, the obligations which it incurred under the bonus contracts, and would not have been accurately shown by keeping its books or making its return on the basis of actual receipts and disbursements. The method which it adopted clearly reflected the true income. And, just as the aggregate amount of the commission notes was properly included in its gross income for the year—although not due and payable until the expiration of two years—so, under the doctrine of the Anderson Case, the total amount of the bonus contracts was deductible as an expense incurred within the year, although it did not 'accrue' in that year in the sense of becoming then due and payable."

Here the deduction of a reserve, in anticipation of the discount to which customers were entitled on accounts included in the income of the taxpayer, was just as necessary to reflect the true income as was deduction of a reserve for the payments of bonus interest which the taxpayer, in the case of the American National Company, was obligated to make.

■■ For the reasons stated, we think that the Board erred in refusing to allow petitioner to deduct the reserve for estimated discounts from the accounts outstanding at the end of each of the years in question. We do not think, however, that petitioner is entitled to a deduction upon the basis of the discounts actually allowed in the succeeding year. Computation of income must be based upon transactions occurring within the taxable period. United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347; Lucas v. American Code Co., 280 U. S. 445, 50 S. Ct. 202, 74 L. Ed. 538; Burnet v. Sanford & Brooks Co., 282 U. S. 359, 51 S. Ct. 150, 75 L. Ed. 383. The accounts were created within the taxable period, and, if the amount

of discount to which they were subject was determinable with reasonable accuracy at the end of the year, the computation of income on this basis may properly be said to be based on transactions occurring within the period. The exact amount of the discounts actually taken, however, was determined by the subsequent payment of the accounts, and to look to these would be to base the computation of income on transactions lying outside the period which is determinative. If the amount of the discounts actually taken be less than the amount of the deduction for estimated discounts, the difference should be accounted for as income of the year in which the accounts are paid, as such difference is in the nature of profit realized in that year. More has been realized from the accounts than was anticipated; and the matter should be treated in the same way as collections upon accounts charged off as worthless. Likewise, if the discount taken be greater than estimated, the difference should be allowed as a loss or expense of the business in the year in which the accounts are paid. In this way the taxpayer will be charged with what is approximately the true value of the accounts outstanding at the end of a taxable year; and any difference between the estimated and actual discount will appear as, what in reality it is, a profit or loss of the succeeding year. See American National Co. v. U. S., supra, 274 U. S. 99, at page 103, 47 S. Ct. 520, 71 L. Ed. 946.

The contention that through allowing a deduction for anticipated discount the taxpayer will receive a double deduction is without merit. Of course, the taxpayer will not be allowed to deduct discount as an expense of the year in which accounts are paid, if he is allowed to deduct it from the total of the accounts for the year in which they are created. So, if the amount collected on the accounts in the succeeding year exactly equals the amount of the accounts less the estimated discount deducted, there is no occasion for further deduction. If the discount actually taken is greater than that estimated, the difference is deductible from the income of the succeeding year as a loss or expense: if it is less, the difference must be accounted for as income of that year, as indicated above. In this case, for instance, when the estimated discount of $13,219.84 is deducted from the accounts included in the return for 1922, only the difference between that amount and $14,639.01 should be allowed as a deduction for 1923 on account of the accounts outstanding at the end of

the year 1922. And, when $22,141 is allowed as a deduction from the accounts included in the return for the year 1923, the difference between that amount and $22,-112.90, or $28.10, should be accounted for as income for the year 1924.

■ And the position that petitioner did not raise before the Board of Tax Appeals the point as to the right to deduct a reserve for estimated discounts is also without merit. The point was expressly raised in the first petition filed with the Board; and, while the amended petition conceded that the Board had held adversely on that point and based the claim for deduction on the point that the discounts had actually been allowed, it did not expressly abandon the original point, and the Board passed on same in its decision, holding that petitioner's case was controlled by its prior decisions which denied the right to deduct a reserve set up for cash discounts. In addition to this, it appears from the record that petitioner is entitled to relief; and we will not turn him out of court because he may have misconceived his remedy. As we have said before, courts exist to do justice, not to furnish a forum for the technical skill of counsel. In reviewing a decision of the Board, we are given broad powers to affirm, modify, or reverse it "as justice may require" (26 USCA § 1226); and we do not think that justice requires that a petitioner with a meritorious case be turned out of court upon any such technical ground. See Underwood v. Commissioner (C. C. A. 4th) 56 F.(2d) 67.

The decision of the Board will be reversed, and the cause will be remanded for further proceedings in accordance with this opinion.

Reversed.