## GIANT FURNITURE CO. v. UNITED STATES.

No. 42070.

Court of Claims.

Jan. 14, 1935.

Benjamin H. Saunders, of Washington, D. C. (Edwin Martenet, of New York City, and E. R. Zane, of Greensboro, N. C., on the brief), for plaintiff.

George H. Foster, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for defendant.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

The plaintiff seeks to recover the sum of $5,685.01, with interest, as refund of payments made to the defendant for corporation income and profits taxes for the calendar year 1918.

June 14, 1919, the plaintiff duly filed its income and profits tax return for 1918 which showed a net income of $16,215.18 and that the tax due thereon was $1,987.-11. Plaintiff paid this tax and its recovery is not now in controversy. The Commissioner audited the return, and on Decem-

ber 25, 1925, assessed an additional tax for 1918 of $10,120.91, which was paid by the plaintiff in installments from May, 1926, to March, 1927. On April 28, 1930, the plaintiff filed a claim for refund, one of the grounds of which and the one upon which the suit is based was the refusal of the Commissioner to allow $6,899.29 as a deduction from gross income for discounts allowed plaintiff's customers. This claim for refund was rejected and the issue in the case is the amount of deduction to which the plaintiff is entitled for the year 1918 on account of discounts allowed its customers.

The net charges for discount on plaintiff's books for 1918 were $71,417.35. Of this amount, $17,107.64 was allowed as a deduction for 1917, having been set up on plaintiff's books as a reserve for discount at the end of that year. If this amount was a proper deduction for 1917, it would leave $54,309.71 as the proper deduction for 1918, plus such a reserve as was set up at the end of that year. This reserve which was allowed by the Commissioner was $10,208.35. The actual deduction allowed by the Commissioner for discount for 1918 was the sum of the last two amounts specified above, namely, $64,518.06, and this was the exact amount claimed by plaintiff in its return. The additional amount now claimed by plaintiff, namely, $6,899.29, is the difference between the reserve set up at the end of 1917 and allowed as a deduction for that year and the reserve set up at the end of 1918 and allowed by the Commissioner for that year. As the amount claimed by plaintiff was allowed as a deduction for 1917 and not allowed for 1918, it is apparent that the controversy between the parties is as to the year for which this deduction should be taken.

As shown in the findings, the plaintiff provided in its invoices for certain discounts conditioned on payment within specified periods. The bills were rendered for the full amount which was included in the gross sales. When the customer paid his bill within a given discount period and took advantage of the discount allowable, the remittance would be for the net amount of the bill. In some instances the sales were made with the understanding that the plaintiff would pay the freight thereon, and accordingly in making payment the plaintiff deducted the amount of the freight. The amount of the freight and discount was charged on plaintiff's books to an account entitled "Freight and discount," and plaintiff set up an amount each year to take care of possible future discounts or adjustments on sales for which collections had not been made. Originally this amount was charged to "Profit and loss" and credited to "Reserve for discount." After 1918, the method used was to make a charge to "Reserve for discount" and a credit to "Freight and discount." The plaintiff now claims that to the extent of the amount in controversy the discounts made were contingent upon the payment of cash at a specified time, and consequently could only be deducted in the year in which they were actually allowed, and that the fact that a reserve had been set up upon its books in the previous year to take care of such allowances is immaterial.

The question upon which the decision in the instant case turns has often been raised, but neither the practice of the Bureau, the rulings of the Board of Tax Appeals, nor the decisions of the courts have been uniform, and both plaintiff and defendant have no difficulty in finding authorities which support their respective positions. The Board of Tax Appeals seems to have finally settled upon the rule that deductions for cash discounts which are contingent in their nature can be allowed only for the year in which they are made. The defendant relies upon the comparatively recent case of Virginia-Lincoln Furniture Corp. v. Commissioner, 56 F.(2d) 1028, in which the Circuit Court of Appeals reversed the Board and held that a taxpayer keeping books on an accrual basis was entitled to deduct a reserve properly set up to meet discounts anticipated in the future in accordance with previous experience. But since the decision in Brown v. Helvering, 291 U. S. 193, 54 S. Ct. 356, 359, 78 L. Ed. 725, the Virginia-Lincoln Case, supra, cannot be taken as an authority, as it is disapproved by the Supreme Court in so far as it is inconsistent with its opinion written in Brown v. Helvering, supra. In that case the Supreme Court laid down the general rule: "But no liability accrues during the taxable year on account of cancellations which it is expected may occur in future years, since the events necessary to create the liability do not occur during the taxable year. Except as otherwise specifically provided by statute, a liability does not accrue as long as it remains contingent."

The court, however, approved the Treasury Regulation of January 8, 1917 (No. 2433), that: "In cases wherein, pursuant to the consistent practice of accounting of

the corporation \* \* \* corporations set up and maintain reserves to meet liabilities, the amount of which and the date of payment or maturity of which is not definitely determined or determinable at the time the liability is incurred, it will be permissible for the corporations to deduct from their gross income the amounts credited to such reserves each year, provided that the amounts deductible on account of the reserve shall approximate as nearly as can be determined the actual amounts which experience has demonstrated would be necessary to discharge the liabilities incurred during the year and for the payment of which additions to the reserves were made."

When we come to consider this regulation in connection with the facts in the instant case, the matter is still left somewhat in doubt, as plaintiff had set up in its reserve what presumably was the amount "which experience has demonstrated would be necessary to discharge the liabilities incurred during the year and for the payment of which additions to the reserves were made." As was said in Lucas v. American Code Co., 280 U. S. 445, 50 S. Ct. 202, 203, 74 L. Ed. 538, 67 A. L. R. 1010, "The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test. And the direction that net income be computed according to the method of accounting regularly employed by the taxpayer is expressly limited to cases where the Commissioner believes that the accounts clearly reflect the net income. Much latitude for discretion is thus given to the administrative board charged with the duty of enforcing the act;" and it was held, in substance, that the interpretation of the statute and the practice adopted by the Revenue Bureau "should not be interfered with unless clearly unlawful." In the Lucas Case, supra, the Commissioner disapproved the accounting practice used by the taxpayer. In Brown v. Helvering, the method of the taxpayer was approved. In the case now before this court the Commissioner approved the accounting method used by the taxpayer, and the taxpayer now claims that the Commissioner erred. It might be argued that the Commissioner's act in so doing was not "clearly unlawful," but it is not necessary for us to decide this point and we prefer to rest our determination of the case upon another matter.

In this connection it should be noted that the discounts involved in the instant case were not all for cash payments. Part of them were for payments of freight which could not be properly held to be contingent. If plaintiff agreed to pay the freight, it was liable for it if the customer paid it; and in case of advance payment by plaintiff in accordance with the agreement there was no liability on the part of the customer. In cases where plaintiff agreed to pay the freight and did not, the customer must have paid it on arrival of the goods, and as a matter of course would deduct it from the bill for the goods shipped.

We think that the defendant has another defense independent of the question which we have discussed above. The findings show that the additional amount now claimed by plaintiff, namely, $6,899.29, is the difference between the reserve set up at the end of 1917 and allowed as a deduction for that year and the reserve set up at the end of 1918 and allowed by the Commissioner for 1918. It thus appears that the plaintiff claims it should be allowed an amount for 1918 which has already been allowed for the year 1917. The allowance for 1917 was made in accordance with the reserve set up on the books of the taxpayer and in accordance with the taxpayer's return. In other words, the taxpayer requested that this allowance be made for 1917, and the request was granted. The taxpayer now, after the statute of limitations has expired for collection of the taxes of 1917, comes into court and asks that another allowance based on the same matters be made for 1918. When the plaintiff in its return for 1917 listed the discounts involved herein as a deduction and obtained a credit thereby, the defendant's officials had reason to believe that it would not also claim a credit for the same discounts in computing its tax for 1918.

In the case of Mahoning Investment Co. v. United States, 3 F. Supp. 622, 629, 78 Ct. Cl. 231, we discussed at some length the doctrine of equitable estoppel, and quoted from Dickerson v. Colgrove, 100 U. S. 578, 580, 25 L. Ed. 618, where it is said: "There is no rule more necessary to enforce good faith than that which compels a person to abstain from asserting claims which he has induced others to suppose he would not rely on."

See, also, Naumkeag Steam Cotton Co. v. United States, 2 F. Supp. 126, 76 Ct. Cl. 687.

We think the rule laid down in these cases applies to the case at bar, and that

plaintiff is estopped from claiming the deduction or allowance which it seeks to have made and which would reduce its taxes for 1918.

It follows that plaintiff's petition must be dismissed, and it is so ordered.