## COMMISSIONER OF INTERNAL REVENUE
### v. BLUM (two cases).
### Nos. 5328, 5329.

Circuit Court of Appeals, Seventh Circuit.
Feb. 23, 1935.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen., for petitioner.

Paul E. Shorb and M. P. Wormhoudt, both of Washington, D. C., for respondents.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

The petitioner seeks a review of the decisions of the United States Board of Tax Appeals with regard to the taxable income of the respondents for the year 1924. The salient facts being the same, the two cases are disposed of in one opinion.

The taxpayers were stockholders of Great Western Smelting & Refining Com-

pany, which on May 16, 1924, entered into an agreement with certain other corporations and a copartnership whereby each of the parties agreed to transfer their several properties to a new company, Federated Metals Company. On June 12, 1924, the contract was approved by the stockholders of Great Western, and in accord with the provisions thereof most of the assets were transferred to Federated. There were excepted from the transfer, however, Great Western's interest in a South American Company and certain accounts receivable. For the assets transferred, Great Western received in 1924, $1,078,813.00 in cash and 103,943 shares of stock of Federated (less than 50 per cent. of its capital). It received in 1926, 131 additional shares of such stock.

The Great Western's stockholders and directors, by resolution, in 1924, directed that the cash received from Federated should be used to redeem the first preferred stock; that the company call for redemption such stock as could thus be redeemed and that the manner of distribution of the stock received from Federated and all other assets available for distribution be determined as promptly as possible after the needs of the company and the amount left available for distribution had been accurately determined. The company retained its corporate franchise and certain assets, as previously mentioned. It has continued its corporate existence and still has certain outstanding liabilities and receivables.

Pursuant to these directions Great Western in 1924 used $908,992.00 to redeem a part of its preferred stock in full at $110 per share, plus $2 accumulated unpaid dividend. On May 22, 1925, it redeemed all the remaining outstanding preferred stock, using for that purpose $169,476 in cash and 64,337 shares of common stock of Federated. At the same time it used 36,189 shares of Federated to retire its second preferred and common stock. All the Great Western preferred stock was canceled, but the common stock remains in its treasury.

Respondent David Blum received from the distribution in 1924, $162,624 in full redemption, upon the terms aforesaid, of 1,452 shares of first preferred stock held by him, which had cost him $56,272.26. Accordingly, in his income tax return for that year, he accounted for the profit thus realized. Bessie Blum realized at the same time $188,160 from the redemption in full of 1,680 shares of preferred stock, and made her return upon the same basis.

In May, 1925, there was paid to David Blum in the same manner $30,283 in redemption of 261 shares of preferred stock. In retirement of all other preferred stock held by him and for the surrender of his common stock, he received at the same time 23,242 shares of common stock of Federated, which was then valued at $30 per share. Bessie Blum received like proportionate sums and shares for her remaining holdings.

The Commissioner held that the transactions related amounted to a reorganization of Great Western, as that term is used in section 203 (h) (1) (A) of the Revenue Act of 1924 (26 USCA § 934 (h) (1) (A), finally completed on May 22, 1925; that the Blums received in the years 1924 and 1925 cash and stock having a total value in excess of the value of their holdings in Great Western and that, to the extent all said cash represented gain, it should be considered taxable income for the year 1924. The Board of Tax Appeals ruled against the Commissioner, holding that the respondents, upon the redemption of their preferred stock in 1924, were bound to account in 1924 only for what was received in that year. These petitions to review followed.

Section 201 (c) of the Revenue Act of 1924 (26 USCA § 932 (c) is, in part, as follows: "Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 202 [section 933], but shall be recognized only to the extent provided in section 203 [section 934]."

It will be observed that Great Western sold, not its capital stock, but the major part of its assets. Presumably, if there was a resulting gain, it made proper return therefor. At any rate, that question is not now before us and is foreign to the issue presented. Having sold said assets, it proceeded first to retire its preferred stock by redemption in cash. This action was plainly within the language of said section 201 (c), quoted above, and within this language of section 201 (h), Revenue Act 1926 (26 USCA § 932 (h) as follows: "The term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete

cancellation or redemption of all or a portion of its stock."

During 1924 it called for redemption in cash and retirement certain shares of preferred stock held by respondents. This cash they accounted for, and upon the resulting gain, after deducting the cost, paid a tax. There was a reduction of outstanding preferred stock, or, as the act says, a "complete cancellation or redemption of all or a portion of its stock." Consequently, the language that such payments are "amounts distributed in partial liquidation," and are to be treated as prescribed in paragraph (c), is clearly applicable. The returns and payments having been made in accordance with these statutory directions, the Board rightfully overruled the Commissioner's contention.

What we have said is sufficient to dispose of the question presented, but it may well be observed that the transaction, upon the undisputed facts, did not constitute a reorganization. The franchise was not assigned; the corporate stock was not transferred; the corporate existence continued. Mere acquisition of the major part of the assets does not of itself constitute reorganization within the meaning of section 203 (h) (1) (A). Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U. S. 462, 53 S. Ct. 257, 77 L. Ed. 428; Sarther Grocery Co. v. Commissioner (C. C. A.) 63 F.(2d) 69. A more complete announcement in this respect appears in Nelson v. Commissioner, 75 F.(2d) 696, decided by this court this day.

Furthermore, were the transaction a reorganization, within the meaning with which that word is used in the Revenue Act, it would seem well settled that the only portion of any resulting gain to be accounted for in 1924 is such as was actually received during that year. Section 212 (b) of the same act, 26 USCA § 953 (b) is as follows: "The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer. * * *"

The Treasury regulations provide that: "Net income must be computed with respect to a fixed period. Usually that period is twelve months and is known as the taxable year." See article 22 of Regulations 65.

The language of the Supreme Court in Burnet v. Sanford & Brooks Co., 282 U. S. 359, 51 S. Ct. 150, 152, 75 L. Ed. 383, is applicable to the situation here: "A taxpayer may be in receipt of net income in one year and not in another. The net result of the two years, if combined in a single taxable period, might still be a loss; but it has never been supposed that that fact would relieve him from a tax on the first, or that it affords any reason for postponing the assessment of the tax until the end of a lifetime, or for some other indefinite period, to ascertain more precisely whether the final outcome of the period, or of a given transaction, will be a gain or a loss. The Sixteenth Amendment was adopted to enable the government to raise revenue by taxation. It is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the government, at regular intervals. Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation. It is not suggested that there has ever been any general scheme for taxing income on any other basis. The computation of income annually as the net result of all transactions within the year was a familiar practice, and taxes upon income so arrived at were not unknown, before the Sixteenth Amendment."

See, also, Virginia-Lincoln Furniture Corp. v. Commissioner (C. C. A.) 56 F.(2d) 1028, and Murchison Nat. Bank v. Grissom, Collector (C. C. A.) 50 F.(2d) 1056.

We deem the venue of the proceedings properly laid.

The decision of the Board of Tax Appeals is affirmed.