## FARMVILLE OIL & FERTILIZER CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3826.

Circuit Court of Appeals, Fourth Circuit.
June 3, 1935.

Alfons B. Landa, of Washington, D. C. (Joseph E. Davies, Raymond N. Beebe, Seth W. Richardson, and Davies, Beebe, Busick & Richardson, all of Washington, D. C., on the brief), for petitioner.

Morgan V. Martin, Sp. Asst. to the Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and J. P. Jackson, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before PARKER and SOPER, Circuit Judges, and MEEKINS, District Judge.

SOPER, Circuit Judge.

The Board of Tax Appeals affirmed a determination by the Commissioner of Internal Revenue of a deficiency of $1,885.97 in the income of the taxpayer for the fiscal year ending July 31, 1930; and this conclusion is assailed on the ground that the Commissioner disallowed a deduction from gross income of $20,859.70 out of $21,545.42 claimed as a reserve for "inactive contingencies." The taxpayer contends that the deduction should have been allowed under the terms of section 23 of the Revenue Act of 1928, 45 Stat. 791 (26 USCA § 2023), which provides that, in computing net income, there shall be allowed a deduction for debts ascertained to be worthless and charged off within the taxable year, or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts. Treasury Regulations 74, article 195, provide that what constitutes a reasonable addition to a reserve for bad debts must be determined in the light of the facts, and will vary as between classes of business and with conditions of business prosperity.

Farmville Oil & Fertilizer Company, the taxpayer, is a North Carolina corporation engaged principally in the manufacture of fertilizer, and, to some extent, in the manufacture of cotton seed oil. Its factory is located in the largest tobacco producing county of North Carolina, and tobacco is the principal crop produced in

the territory which it serves. In the taxable year ending July 31, 1930, with which we are concerned, and prior thereto, the taxpayer kept its books on an accrual basis, and set up a reserve for bad debts called "reserve for doubtful accounts and losses." It also kept an account called "fertilizer discount" to serve as a record of cash discounts, trade discounts, quantity discounts, dealers' and jobbers' discounts, and price adjustments allowed to its customers; and this account was annually cleared to profit and loss as an offset to fertilizer sales. The practice in the sale of goods was to credit fertilizer sales and charge the customers for goods at retail prices, and to make adjustments for discounts and price corrections when the customers subsequently settled their accounts. The price corrections were dependent upon prices established by competitors.

The amounts added to the reserve for bad debts during 1925 to 1927 approximated 6 to 8 per cent. of the outstanding accounts and notes receivable. In the year ending July 31, 1929, when the tobacco crop failed, approximately 12 per cent. was added and allowed, and $78,597.57 was charged against the reserve. During this year, new accounts and notes receivable to the amount of $439,310.39 were created, of which not quite one-half had been collected twelve and a half months after the fiscal year closed.

Business during the next taxable year ending July 31, 1930, was worse, the average market price of tobacco dropping from 18 cents, prevailing in 1929, to 12 cents. The accounts and notes receivable outstanding at the end of the year amounted to $990,736.08. At the beginning of the year, the accumulated bad debt reserve was $250,789.49, to which the taxpayer added $64,405.44 during the year, which was more than 12 per cent. of the new accounts and notes receivable added during the year. This amount was allowed by the Commissioner as a deduction from gross income. The taxpayer charged off $101,638.22 as worthless accounts against the reserve. It collected on accounts previously charged off $6,502.72.

In addition to the sum of $64,405.44 added to the reserve for bad debts, the petitioner at the end of the tax year charged fertilizer discount account with the sum of $21,545.42 for discounts and price corrections on a selected list of accounts, representing about 10 per cent. thereof, and credited the reserve for inactive contingencies with the same amount, and deducted this sum from its gross sales. After the close of the year, the taxpayer actually allowed total discounts upon the selected accounts of $5,252.70, and ascertained $57,778.43 to be worthless. The Commissioner disallowed $20,859.70 of the amount credited to reserve for inactive contingencies, and it is this action which the taxpayer seeks to review, contending that the amount disallowed was properly deductible as an addition to its reserve for bad debts under the statute, or as an addition to its reserve for inactive contingencies, or both.

We agree with the Board in its conclusion that the deduction may not be allowed on either ground. In the first place, there is substantial evidence to support the Board's finding that it was not the original intention of the taxpayer to use the addition to the reserve for inactive contingencies made at the close of 1930 as a part of its reserve for bad debts. It is true that there is evidence tending to show that the reserve for inactive contingencies was set up to take care of both discounts and losses in making collections; but, on the other hand, the separate establishment of this reserve and its association on the taxpayer's books with the fertilizer discounts account indicates that it was not designed to be a part of the reserve allowed by the statute. Moreover, the taxpayer in its tax return entered the sum of $64,405.44 as a deduction for bad debts, but subtracted the item in question from the amount of its gross sales. The Board, therefore, had the right to find that the additional reserve was designed to cover discounts and not bad debts.

It is nevertheless contended by the taxpayer that in view of the increasing business and financial depression which prevailed in the year 1930, the allowance of the additional sum of $21,545.42 as a deduction for bad debts for the taxable year would be entirely reasonable. This may be true; but it is not a certainty, for although the taxpayer has shown that the total reserve for bad debts was insufficient in 1932 to cover all bad debts and losses then outstanding, this condition, so far as the evidence shows, may have been attributable to inadequate additions to the reserve in 1931 and 1932, and not to an inadequate addition in 1930. Furthermore, the realization by the taxpayer long after the close of the taxable year that its reserve for bad

debts during that year was insufficient does not justify its enlargement retroactively. The statute allows a deduction for bad debts if ascertained to be worthless and charged off within the year, or, in the alternative, a reasonable addition to a reserve for bad debts in the discretion of the Commissioner. We do not think that Congress meant that the amount of the reserve might be increased by the taxpayer long after the taxable year had expired, while limiting deductions for debts charged off to those actually ascertained to be worthless and charged off within the year.

Doubtless, under proper circumstances, the correctness of the taxpayer's estimate in fixing the amount to be added to the reserve in any year may be supported by reference to the losses actually incurred in subsequent years, as was held in Peyton Du-Pont Securities Co. v. Commissioner (C. C. A.) 66 F.(2d) 718; or the failure of the taxpayer during the taxable year to observe the proper technical procedure in claiming a deduction may be overlooked, as in Rhode Island Hospital Trust Co. v. Commissioner (C. C. A.) 29 F.(2d) 339; but estimates fairly made at the time may not be enlarged in the light of subsequent events, for then the reserve would cease to be a true reserve, and the taxpayer, contrary to the spirit of the statute, would be permitted to deduct worthless debts in a year prior to that in which their worthlessness would be realized. Such a result would be entirely out of harmony with our taxing system, which was designed to produce revenue, ascertainable and payable to the government at regular annual intervals, based upon the net result of the taxpayer's operations within the taxable year. Burnet v. Sanford & Brooks Co., 282 U. S. 259, 51 S. Ct. 150, 75 L. Ed. 383.

Even if it should be found that the taxpayer's addition to reserve for inactive contingencies was intended, when made, to serve in part as a reserve for bad debts, it would be impossible to determine from the evidence how much thereof was intended for this purpose, and how much for a reserve for discounts. As we have seen, the total amount was charged to fertilizer discount account, and confessedly, a part thereof was intended to take care of discounts and price adjustments upon fertilizer sales in an amount to be later determined. The president of the taxpayer corporation testified that the amount of the reserve was estimated to take care of adjustments to be made after the close of the taxable year, and that the outcome of the accounts could not be established when the tax return was filed. It is now settled, the decision in Virginia-Lincoln Furn. Co. v. Commissioner (C. C. A.) 56 F.(2d) 1028, having been disapproved, in Brown v. Helvering, 291 U. S. 193, 200, 54 S. Ct. 356, 78 L. Ed. 725, that although a liability accrued during the year may be treated as an expense incurred, and serve as a basis for a deduction, a liability which remains contingent during the year does not accrue and may not be deducted, unless specifically authorized by statute; and this principle applies to a reserve for discounts. Hence, the Board was confronted with the certainty in the instant case that some indeterminable part of the amount under consideration was not allowable as a deduction under any permissible theory. The taxpayer now suggests that quantity discounts and price adjustments must have been determinable during the year; but proof on these points is lacking, and it is not shown in any event how much of the whole these alterations comprise.

The decision of the Board of Tax Appeals is affirmed.