## ROGAN v. COMMERCIAL DISCOUNT CO.
### No. 10844.

Circuit Court of Appeals, Ninth Circuit.
May 25, 1945.

Rehearing Denied June 29, 1945.

586

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, A. F. Prescott, S. Dee Hanson, and Hilbert P. Zarky, Sp. Assts. to Atty. Gen., and Charles H. Carr, U. S. Atty., and E. H. Mitchell, Asst. U. S. Atty., both of Los Angeles, Cal., for appellant.

O'Melveny & Myers, Homer I. Mitchell, and Maynard J. Toll, all of Los Angeles, Cal., for appellee.

Before MATHEWS, STEPHENS, and BONE, Circuit Judges.

BONE, Circuit Judge.

Taxpayer, Commercial Discount Company, a California corporation, brought suit for a refund against the Collector of Internal Revenue to recover corporate income tax and interest paid by it for the calendar year of 1934. Both parties agree that during that year the taxpayer suffered a loss on one transaction in excess of $124,000, and this controversy is over that item on which taxpayer claims it improperly paid taxes. Claim for the refund was filed in March, 1938. The District Court entered judgment on the claim against the defendant Collector, and the Government seeks review.

At all times pertinent to this inquiry, the taxpayer was operating under the reserve method for handling bad debts and did not employ the charge-off method. The statute allows these alternative methods, but having made an election as to which method it would adopt, it could not change to the other method in the absence of the Commissioner's express permission. See footnote 1 for reference to statute and regulations. Also Athol Mfg. Co. v. Commissioner of Internal Revenue, 1 Cir., 54 F.2d 230. Nor can it adopt, for the purposes of this suit, the status of a taxpayer operating under the system of annually charging off bad debts. See Atlantic Bank & Trust Co. v. Commissioner of Internal Revenue, 4 Cir., 59 F.2d 363.[1]

The principal business of taxpayer had been the purchase of contracts for the conditional sale of automobiles and collection of payments thereon. Loans on real estate were but a small part of its business. During 1932, taxpayer loaned $180,000 to another California corporation on a piece of real estate in Los Angeles. The borrower executed and delivered to taxpayer its promissory note in that sum along with a deed of trust covering the real estate and securing the note. The note provided that the borrower should not be personally liable on the note or for any deficiency following sale under or foreclosure of the deed of trust. The real estate thus became the sole security for the payment of the debt. The borrower defaulted in payments of interest on the note and taxes on the property and, under the deed of trust, the various defaults clearly entitled the taxpayer to demand sale of the property, the proceeds of such sale to be applied to payment of the note. Taxpayer, seeking to avoid such proceeding accepted a voluntary deed of the property on or about May 15, 1934 and this conveyance was made in full satisfaction of the said debt. The parties agree that on this date the property had a fair market value of $70,000. Certain necessary expenditures by taxpayer to protect the property from tax liens, assessments and the like, made the actual debt secured by the trust deed exceed $195,000. Deducting the then fair market value of the property left the asserted loss on this transaction in 1934 to be a sum in excess of $124,000.

It is clear from the testimony in the record that taxpayer and its certified public accountant "believed that for tax purposes the transaction of May 15, 1934, (acceptance of deed) was properly to be analyzed as a *purchase* of the property for the amount of the indebtedness at that date, no *loss* of any kind being involved from the tax standpoint." Taxpayer frankly admits that it would then have included in its addition to its reserve for bad debts a sum to meet this loss "had it not misunderstood

---

1 Where taxpayer uses *bad debt reserve* he cannot, at the same time have right, inconsistently, to take a deduction for claimed bad debt as "Debts *ascertained* to be worthless and *charged* off within taxable year." He cannot adopt both methods since he has made an election and cannot change method without express permission of Commissioner. Art. 23 (k)-1, Regulations 86; See Athol case, supra; Appeal of Transatlantic Clock Co. 3 B.T.A. 1064, 1066; Marks v. Commissioner of Internal Revenue 9 B.T.A. 1047.

the law to be that the particular transaction constituted a purchase of the property for a consideration equal to the amount of the debt." Also that "it was the taxpayer's understanding that no matter what the value of the property was at the time it was acquired in 1934, the taxpayer was not entitled to claim any loss until it sold the property." The expert accountant in charge of the auditing of accounts for taxpayer at the time was its principal witness on the trial. His uncontradicted testimony makes it abundantly clear that taxpayer did not *ascertain* the debt to be worthless within the taxable year of 1934 and charge it against the bad debt reserve of the company for the reason that it then regarded the transaction as a purchase.

In its Findings the trial court found that taxpayer, through misconstruction of the transaction resulting in the bad debt, should have, but failed to add the amount thereof to its regular bad debt reserve for the taxable year of 1934. It also found that the taxpayer nevertheless, knew at the end of that year that the indebtedness no longer existed and could not be collected or recovered. This last mentioned finding has no support in the evidence. Witness Savant, expert accountant for taxpayer and its principal witness, in response to the question, "It [the indebtedness] was never ascertained to be worthless during the year '34?", answered "No.".[2] This statement is in harmony with the evidence and the allegations on this point in taxpayer's complaint for refund of income tax that it had never even considered or made any allowance for the item (bad debt) as an addition to its regular bad debt reserve maintained for its other doubtful accounts. This testimony is rendered more emphatic by other testimony of Savant that he considered the transaction of 1934 as "an exchange of a note for a piece of property" and that he (then) regarded it "as a purchase of the property for the amount of the debt." Also that the company had had other similar

transactions and that this acquisition was "considered then as being an investment in real estate."

The question for decision is whether, under this state of facts, taxpayer is entitled, under Sec. 23 (k) of the Revenue Act of 1934, 26 U.S.C.A.Int.Rev.Acts, page 671, to a deduction as a bad debt of the amount of the difference between the sum of the said mortgage loan made in 1932 and the fair market value of the property it accepted in satisfaction of that indebtedness in 1934.

From the facts as outlined, taxpayer argues that it actually reported on its income tax return (for 1934), $124,513.94 more net income than it should and that the judgment below should be affirmed.

▮ The record indicates that in its 1934 return taxpayer charged the current annual addition to its reserve for bad debts and deducted such amount in that return. It is clear that it cannot now, through a claim for refund, retroactively deduct a specific debt, not ascertained to be worthless until 1938. Whether a taxpayer is on the charge-off or the reserve method of treating bad debts, there must be an annual review of doubtful accounts receivable and an ascertainment that certain accounts are either uncollectible or that there is a reasonable probability that they are not collectible. Furthermore, it is required that there be an entry made on the books showing such determination, either by a charge-off or a charge to the reserve for bad debts. In the instant case, the taxpayer took an addition to its bad debt reserve of nearly $50,000 in 1934, and reported this addition in its return for that year. It has never made on its books (so far as the record shows) or in its income tax return, any addition to its reserve for bad debts on account of the loss here in question, or taken the loss into consideration, or made any allowance therefor in computing the amount added to its bad debt reserve in any year. It now seeks to take a deduction for a spe-

[2] The evidence shows that the debt was not ascertained, by appraisal of the property or by any kind of formal accounting steps, to be worthless within the taxable year and the amount thereof charged to its bad debts reserve account. See Moore v. Commissioner of Internal Revenue, 2 Cir., 101 F.2d 704, the court holding that the loans to the corporation had been ascertained to be worthless in the taxable year and therefore were deductible, stat-

ed, among other things, as follows (101 F.2d at pages 706, 707):

"The first inquiry is whether or not the taxpayer did in fact *ascertain* a debt to be worthless in the year for which deduction is sought. * * *

"The real question is not when did the debt become worthless, but when did the taxpayer *ascertain* it to be worthless. Jones v. Commissioner [of Internal Revenue], 7 Cir., 38 F.2d 550." [Emphasis added.]

cific bad debt some four years after the close of the tax year. Under the statute, regulations and what we regard as the weight of authority, this cannot properly be done.

The statute allows deductions for bad debts ascertained to be worthless and charged off within the taxable year or, parenthetically, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts; and that when satisfied that a debt is recoverable only in part, the Commissioner may allow as a deduction such debt in an amount not in excess of the part charged off within the taxable year. Sec. 23(k), Revenue Act of 1934. The interpretive regulations [3] promulgated thereunder provide that bad debts may be treated either (1) by deductions from gross income in respect to debts ascertained to be worthless in whole or in part, or (2) by deduction from income of an addition to a reserve for bad debts; with further provisions, as indicated, for debts that are worthless either wholly or in part. Regulations 86, Article 23(k)-1. They also provide that if mortgaged property is lawfully sold to the creditor for less than the amount of the debt and the mortgagee ascertains that the portion of the indebtedness remaining unsatisfied after such sale is wholly or partially uncollectible "and charges it off, he may deduct such amount * * * as a bad debt for the taxable year in which it is ascertained to be wholly or partially worthless and charged off." (See Article 23(k)-3, Treasury Regulations 86.)

Finally they provide that a taxpayer who has established the reserve method of treating bad debts and maintained proper reserve accounts therefor may deduct from gross income a reasonable addition to such reserve in lieu of a deduction for specific bad debt items, only to the extent of the amount of "the debts which have been ascertained to be wholly or partially worthless and charged against the reserve account during the taxable year." (Article 23(k)-5, Regulations 86.) [4]

The provisions of the statute and regulations provide that *either* the direct charge-off *or* in the Commissioner's discretion, the reserve method (these two methods are mutually exclusive) may be used consist-

---

[3] Since the administrative interpretation placed upon the bad debt reserve method has remained the same over a long period of time and Congress by the reenactment of the statutory provision here involved without substantial change has by clear implication ratified that interpretation, it is entitled to great weight and should not be disturbed. United States v. Cerecedo Hermanos Y Compania, 209 U.S. 337, 339, 28 S.Ct. 532, 52 L.Ed. 821; United States v. Safety Car Heating Co., 297 U.S. 88, 56 S.Ct. 353, 80 L.Ed. 500; Retailers Credit Ass'n v. Commissioner of Internal Revenue, 9 Cir., 90 F.2d 47, and cases cited therein. See also Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52, and Spring City Foundry Co. v. Commissioner of Internal Revenue, 292 U.S. 182, 189, 54 S.Ct. 644, 78 L.Ed. 1200; United States v. Dakota-Montana Oil Co., 288 U.S. 459, 466, 53 S.Ct. 435, 77 L. Ed. 893; Helvering v. Reynolds, 313 U. S. 428, 432, 61 S.Ct. 971, 85 L.Ed. 1438, 134 A.L.R. 1155, and Helvering v. Griffiths, 318 U.S. 371, 395, 396, 63 S.Ct. 636, 87 L.Ed. 843. The reserve method of handling bad debts was first permitted by a provision in the Revenue Act of 1921, 42 Stat. 227, with regulatory provisions currently adopted. Substantially the same regulations interpretative of like statutory provisions in regard to bad debt reserves have been in effect ever since that time.

[4] Revenue Act of 1934, c. 277, 48 Stat. 680, 26 U.S.C.A. Int.Rev.Acts, page 671:

"Sec. 23. Deductions from Gross Income.

"In computing net income there shall be allowed as deductions:

* * * * * * * *

"(k) Bad Debts. Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. * * *"

"Treasury Regulations 86, promulgated under the Revenue Act of 1934:

"Art. 23 (k)-1. Bad debts.—Bad debts may be treated in either of two ways—

"(1) By a deduction from income in respect of debts ascertained to be worthless in whole or in part, or

"(2) By a deduction from income of an addition to a reserve for bad debts.

"Taxpayers were given an option for 1921 to select either of the methods mentioned for treating such debts. (See article 151, Regulations 62.) The method used in the return for 1921 must be used in returns for subsequent years and in returns under the Revenue Act of 1934 unless permission is granted by the Com-

ently in establishing and taking bad debt deductions but require that *in both cases* the debt must be ascertained to be worthless and either charged off or written down to a nominal amount on the books, or charged against the reserve account, respectively, within the taxable year. Here the taxpayer met neither of those prerequisites. Taxpayer is not shown to have appraised the underlying property to ascertain the value or worthlessness of the indebtedness in 1934, and it was not until 1938 that it first made inquiries with respect to its current market price. Admittedly, the taxpayer never timely ascertained the debt to be worthless.

Taxpayer urges that it did not know that it could deduct the asserted loss of 1934, as a bad debt. The promissory note, by its terms, made the real property under the deed of trust the sole security for the payment of the note. Acquiring the property as it did in 1934, extinguished all liability of the maker of the note. Ignorance of the law does not warrant a taxpayer's failure timely to ascertain worthlessness and charge off a debt or make reasonable addition therefor in its bad debt reserve within the taxable year, as required by statute, regulations and the authorities.

In Farmville Oil & Fertilizer Co. v. Commissioner of Internal Revenue, 4 Cir., 78 F.2d 83, 85, the court held that the taxpayer could not increase reserve for bad debts after the expiration of the taxable year, notwithstanding that reserve was insufficient. Congress did not mean that the amount of the reserve might be increased

---

missioner to change to the other method. * * *

"If all the surrounding and attending circumstances indicate that a debt is worthless, either wholly or in part, the amount which is worthless and charged off or written down to a nominal amount on the books of the taxpayer shall be allowed as a deduction in computing net income. There should accompany the return a statement showing the propriety of any deduction claimed for bad debts. * * * Before a taxpayer may charge off and deduct a debt in part, he must ascertain and be able to demonstrate, with a reasonable degree of certainty, the amount thereof which is uncollectible. Any amount subsequently received on account of a bad debt or on account of a part of such debt previously charged off and allowed as a deduction for income tax purposes, must be included in gross income for the taxable year in which received. In determining whether a debt is worthless in whole or in part the Commissioner will consider all pertinent evidence, including the value of the collateral, if any, securing the debt and the financial condition of the debtor. Partial deductions will be allowed with respect to specific debts only.

"Where the surrounding circumstances indicate that a debt is worthless and uncollectible and that legal action to enforce payment would in all probability not result in the satisfaction of execution on a judgment, a showing of these facts will be sufficient evidence of the worthlessness of the debt for the purpose of deduction. * * *

"Art 23 (k)-3. Uncollectible deficiency upon sale of mortgaged or pledged property.—If mortgaged or pledged property is lawfully sold (whether to the creditor or another purchaser) for less than the amount of the debt, and the mortgagee or pledgee ascertains that the portion of the indebtedness remaining unsatisfied after such sale is wholly or partially uncollectible, and charges it off, he may deduct such amount (to the extent that it constitutes capital or represents an item the income from which has been returned by him) as a bad debt for the taxable year in which it is ascertained to be wholly or partially worthless and charged off. * *

"Accrued interest may be included as part of the deduction only if it has previously been returned as income.

"Art. 23 (k)-5. Reserve for bad debts.— Taxpayers who have established the reserve method of treating bad debts and maintained proper reserve accounts for bad debts, or who, in accordance with article 23 (k)-1 adopt the reserve method of treating bad debts, may deduct from gross income a reasonable addition to a reserve for bad debts in lieu of a deduction for specific bad debt items.

"What constitutes a reasonable addition to a reserve for bad debts must be determined in the light of the facts, and will vary as between classes of business and with conditions of business prosperity. A taxpayer using the reserve method should make a statement in his return showing the volume of his charge sales (or other business transactions) for the year and the percentage of the reserve to such amount, the total amount of notes and accounts receivable at the beginning and close of the taxable year, and the amount of the debts which have been ascertained to be wholly or partially worthless and charged against the reserve account during the taxable year."

by the taxpayer long after the taxable year had expired. "Estimates fairly made at the time may not be enlarged in the light of subsequent events, for then the reserve would cease to be a true reserve, and the taxpayer, contrary to the spirit of the statute, would be permitted to deduct worthless debts in a year prior to that in which their worthlessness would be realized. Such a result would be entirely out of harmony with our taxing system * * *."

In Consolidated Dry Goods v. United States, D.C., 35 F.Supp. 523, the taxpayer, in 1933, filed a claim for refund of taxes claimed to have been overpaid on its 1930 return. It was operating under the reserve method of handling bad debts. The court held that the Commissioner was not arbitrary or capricious, where taxpayer's auditor was of the opinion when taxpayer's books were closed at the end of 1930 that reserve then set up was adequate and taxpayer did not assert the right to make addition until 1933 although taxpayer was in possession of information as to alleged need of additional reserve in 1931 before the return for 1930 was filed; and the addition appeared to be an afterthought to effect a reduction of the tax. As in the instant case, the allowance of the claim would have recognized the right, through a claim for refund, retroactively to deduct a specific debt, not ascertained to be worthless within the time prescribed by the statute and regulations.

We hold to the view that under the law applicable to this case, a taxpayer is entitled to a bad debt deduction only if the debt is both ascertained to be worthless and charged off within the same taxable year.

Some of the authorities have held that the fact that debts are charged off in one year raises no presumption that they were also ascertained to be worthless in that year. The burden is still on the taxpayer to prove the latter fact. See Malden Trust Co. v. Commissioner of Internal Revenue, 110 F.2d 751, 752.

In Hamlen v. Welch, 1 Cir., 116 F.2d 413, 419; the court pointed out that ordinary business practice necessitates the allowance of a reasonable time after the close of the year for the auditing of the books and the physical notation of the closing entries of profit and loss. The Circuit Court construed the law and regulations to allow relaxation of the statutory rule only within a reasonable orbit of operations in accounting practice, stating that "It is not the physical act done within the year to which Congress has referred, but to the setting up of evidence as to the ascertainment of worthlessness substantially as of the date of such ascertainment and in confirmation thereof in order that such entries will effectually eliminate the amount of the bad debt from the book assets of the taxpayer." In this case, the entries were made to profit and loss in January or February, 1936, as of December 31, 1935 (the tax year). The court states that "The statutory language has been construed many times without legislative change to allow a deduction for bad debts physically charged off in the first months of the succeeding year as of the preceding taxable year." There had been an appraisal of the properties in November, 1935, and this was shown to prove that taxpayer had, in 1935, actually ascertained the claim in question to be worthless.

The absolute necessity of a strict compliance with the statute and regulations is emphasized in Fairless v. Commissioner of Internal Revenue, 6 Cir., 67 F.2d 475. Commissioner of Internal Revenue v. Spreckels, 9 Cir., 120 F.2d 517, reveals a situation where due to acceptance of a deed by a mortgagee, the transaction gave rise to a "bad debt" for which taxpayer could make claim in her tax return for 1934, the year the loss was charged off on her books.

On these authorities, and cases cited therein, we hold that the taxpayer is not entitled to the claimed deduction, and the judgment of the District Court, as amended, is reversed.